UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

SAMARK JOSE LOPEZ BELLO,
        a/k/a "Samark Lopez Delgado,"
        a/k/a "Sierra Lima,"

                        Defendant.

S5 19 Cr. 144 (AKH)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT SAMARK JOSÉ LÓPEZ BELLO'S MOTION TO DISMISS**

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel.: (212) 390-9550

ALEXEI SCHACHT
123 West 94th Street
New York, New York 10025
Tel.: (646) 729-8180

*Attorneys for Samark José López Bello*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 2

   I.   MR. LÓPEZ BELLO IS NOT A FUGITIVE ................................................ 2

      A.   Mr. López Bello Is Not a Traditional Fugitive ............................................ 2

      B.   Nor Did Mr. López Bello "Constructively Flee" the United States ............................. 4

      C.   Mr. López Bello Has Not Taken Action to Distance Himself from the United States or Frustrate Arrest ............................................................ 6

      D.   The Government Conflates the Date on Which Mr. López Bello Was Sanctioned with the Date on Which He Was Charged ............................................ 8

      E.   Mr. López Bello's Ties to the United States Prior to the Imposition of Sanctions Do Not Affect the Fugitivity Analysis ............................................ 9

      F.   The Proceedings in *Stansell* Have No Bearing on This Motion ............................... 12

  II.   EVEN IF MR. LÓPEZ BELLO WERE A FUGITIVE, DISENTITLEMENT IS NOT WARRANTED. ............................................................................... 14

      A.   Disentitling Mr. López Bello Would Be "Too Harsh a Means of Ensuring Mutuality in the Litigation" ............................................................ 14

      B.   Mr. López Bello Is Not Flouting the Judicial Process ................................... 16

      C.   Disentitling Mr. López Bello Would Not Discourage Flights from Justice ............... 16

      D.   Adjudicating Mr. López Bello's Motion Would Cause Minimal Prejudice to the Government, Whereas Mr. López Bello Would Suffer Severe Prejudice If the Court Disentitled Him ............................................................ 17

  CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Degen v. United States*,
    517 U.S. 820 (1996) …………………………………………………………….... 14, 17

*Empire Blue Cross & Blue Shield v. Finkelstein*,
    111 F.3d 278 (2d Cir. 1997 ……………………………………………………… 3

*In re Hijazi*,
    589 F.3d 401 (7th Cir. 2009)…………………………………………………… 10

*SEC v. Berger*,
    322 F.3d 187 (2d Cir. 2003) …………………………………………………… 17

*Stansell v. Revolutionary Armed Forces of Colombia*,
    No. 09 Civ. 2308 (M.D. Fla. 2010)...………………………..………………….... 12

*Stansell v. Revolutionary Armed Forces of Colombia*,
    45 F.4th 1340 (11th Cir. 2022) …………………………………………….. 12, 15

*Stansell v. Revolutionary Armed Forces of Colombia*,
    19 Civ. 20896 (S.D. Fla. 2022) …………………………………………….. 12, 13

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van
Saybolt Int'l B.V. v. Schreiber*,
    407 F.3d 34 (2d Cir. 2005) …...……………………………………………… 14

*United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce,
Fenner & Smith*,
    801 F. Supp. 984 (E.D.N.Y. 1992) …………………………………………… 6

*United States v. Bescond*,
    24 F.4th 759 (2d Cir. 2021) ……………………………………...………... *passim*

*United States v. Buck*,
    No. 13 Cr. 282 (VM), 2015 WL 195872 (S.D.N.Y. 2015)……………………… 6

*United States v. Cornelson,*
    No. 15 Cr. 516 (JGK), 2022 WL 970075 (S.D.N.Y. 2022) ……………………. *passim*

*United States v. Cornelson*,
    No. 15 Cr. 516 (JGK), (S.D.N.Y. 2021) ………………………………..…….. 10, 11

*United States v. Eng*,
    951 F.2d 461 (2d Cir. 1991) …………………………………………………... 6

*United States v. Forty-Five Thousand Nine Hundred Forty Dollars*,
739 F.2d 792 (2d Cir. 1984) …………………………….………………………….. 6

*United States v. Schreiber*,
535 F. Supp. 1359 (S.D.N.Y. 1982) ……………………………………………….. 3

*United States v. Sindzingre*,
2019 WL 2290494 (E.D.N.Y. May 29, 2019) …………………………………… 7, 11

*United States v. Technodyne LLC*,
753 F.3d 368 (2d Cir. 2014) …………………………………………………………... 2

**Statutes**

8 U.S.C. § 1182 ……………………………………………………………………….. 5

**Other Authorities**

Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120 …………………….. 5

U.S. Immigration and Customs Enforcement, *Lopez Bello, Samark – Wanted for Sanctions Evasion*, Aug. 16, 2022, https://www.ice.gov/most-wanted/lopez-bello-samark-jose.................. 8

U.S. Immigration and Customs Enforcement, *Department of State offers $5M reward for information leading to arrest, conviction of former Venezuelan government official on ICE Most Wanted List,* Oct. 8, 2020, https://www.ice.gov/news/releases/department-state-offers-5m-reward-information-leading-arrest-conviction-former ................................................................. 8

Hr'g Tr., *United States v. Swen*,
No. 07 Cr. 462 (LAP) (S.D.N.Y. Mar. 7, 2008), ECF No. 26……...…………………… 6

This reply brief is respectfully submitted in further support of Mr. López Bello's motion to dismiss.

## PRELIMINARY STATEMENT

Mr. López Bello's motion to dismiss presents serious challenges to the charges against him. But rather than engage on the merits, the government's opposition ignores them completely and urges the Court to do the same, based on an erroneous application of the fugitive disentitlement doctrine. However, Mr. López Bello is not a fugitive and applying that doctrine here would unjustly deprive Mr. López Bello of his right to be heard by the Court. He is not alleged to have committed the alleged offenses in the United States, and he last set foot in the United States two years before he was charged in this case. Under binding Second Circuit law, he is entitled – as any other defendant would be – to have the Court consider his challenge to the validity of the government's charges and receive a ruling on the merits.

In February 2017, Mr. López Bello departed the country for a trip from a lawful port of departure, with a passport and a valid visa. Following his departure, the Treasury Department sanctioned Mr. López Bello and blocked his U.S. assets. No warrant was issued for his arrest, and no criminal charges were brought against him. But by sanctioning Mr. López Bello, the government effectively barred him from returning to the country.

After the U.S. government severed Mr. López Bello's prior ties to the United States, Mr. López Bello lived openly in his home country of Venezuela, not once setting foot in the United States during the alleged offense conduct. Since his designation, he has abided by the U.S. government's sanctions, including by applying for – and obtaining – dozens of licenses to permit him to do what the government now alleges he attempted to do illegally. And far from "concealing" himself, Mr. López Bello has engaged in protracted efforts to clear his name and

undo the government's wrongful allegations against him, which have caused him significant reputational and financial damage.

Rather than contend with the serious challenges to the Indictment set forth in our opening brief, the government ignores binding Second Circuit law and argues that Mr. López Bello's absence from the country since 2017 – a product of its own sanctions – somehow constitutes an attempt by Mr. López Bello to evade criminal charges based on conduct that had not even occurred when he was last present in the United States. Such an argument defies logic and turns the fugitive disentitlement doctrine on its head.

The Court should decline to apply the fugitive disentitlement doctrine, reach the merits of Mr. López Bello's motion, and dismiss the charges against him.

## ARGUMENT

## I.   MR. LÓPEZ BELLO IS NOT A FUGITIVE

Mr. López Bello cannot be disentitled for the simple reason that he is not a fugitive. There are two types of fugitives in criminal cases: traditional fugitives and constructive-flight fugitives. *See United States v. Bescond*, 24 F.4th 759, 771–72 (2d Cir. 2021). It is the government's burden to prove that a defendant it seeks to disentitle is, in fact, a fugitive. *See United States v. Technodyne LLC*, 753 F.3d 368, 381 (2d Cir. 2014) (government "bears the burden of establishing the factual prerequisites" for disentitlement).

In its opposition, the government does not say which definition it believes Mr. López Bello falls under. That is because he plainly falls under neither.

### A.   Mr. López Bello Is Not a Traditional Fugitive

A traditional fugitive is a person who "having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of

2

abode and conceals himself within the district." *Bescond*, 24 F.4th at 771 (quoting *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 281 (2d Cir. 1997)) (alterations in original).

The government effectively concedes that Mr. López Bello is not a traditional fugitive. As in Judge Koeltl's recent decision in *United States v. Cornelson*, "it is undisputed that [Mr. López Bello] was not in the United States at the time of the acts alleged in the Indictment, and that he ha[d] not been in the United States . . . [for] years prior to his Indictment." No. 15 Cr. 516 (JGK), 2022 WL 970075, at *4 (S.D.N.Y. Mar. 31, 2022); Opp'n Ex. C (summarizing Mr. López Bello's travel to the United States between 2008 and 2017). A defendant "cannot be a [traditional] fugitive unless he was present in the demanding state at the time the crime was committed[.]" *United States v. Schreiber*, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982). The allegations in the Indictment make clear that Mr. López Bello was not. *See* Superseding Indictment ¶¶ 21, 26, 30, 34, 40, 42, 44, 46 (alleging that each count was "begun and committed out of the jurisdiction of any particular State or district of the United States").

Furthermore, Mr. López Bello did not "flee from the jurisdiction of the court." *Bescond*, 24 F.4th at 771 (cleaned up). As the government concedes, Mr. López Bello was last present in the United States two years before charges against him were filed. Opp'n 8. And it is undisputed that Mr. López Bello left from a lawful port of departure using a valid passport. *See* Opp'n Ex. C at 1 (identifying passport used for travel); Opp'n Ex. A at 1 (describing Mr. López Bello's temporary tourism/business visas).

Mr. López Bello has been accused of violating sanctions. Yet those very same sanctions *did not even exist* when he last left the country. Specifically, the Treasury Department did not designate Mr. López Bello until a week after he last departed the United States. Therefore, the charges in this case – filed two years later – were premised on conduct that had not yet occurred

at the time of his departure. "Because he did not commit the alleged crimes in the United States, he did not flee from the United States, and he did not otherwise conceal himself," Mr. López Bello "does not meet the definition of a traditional fugitive." *Cornelson*, 2022 WL 970075, at *4. The government articulates no argument to the contrary.[1]

### B.   Nor Did Mr. López Bello "Constructively Flee" the United States

Mr. López Bello also is not a constructive-flight fugitive. A constructive-flight fugitive is "a person who allegedly committed crimes *while in the United States* but who was outside the country – for whatever reason – when [he] learned that [his] arrest was sought and who then refused to return to the United States in order to avoid prosecution." *Bescond*, 24 F.4th at 772 (internal quotation marks and alterations omitted).

Mr. López Bello is not alleged to have committed any crime in the United States. *See* Superseding Indictment ¶¶ 21, 26, 30, 34, 40, 42, 44, 46.[2] That alone is dispositive. *See Bescond*, 24 F.4th at 772; *Cornelson*, 2022 WL 970075, at *4. Like the defendants in both *Bescond* and *Cornelson*, Mr. López Bello stopped traveling to the United States several years "prior to being notified that his arrest was sought." *Cornelson*, 2022 WL 970075, at *4; *see also*

---

[1] In an effort to imply flight where it clearly did not exist, the government makes much of Mr. López Bello's travel between Venezuela, Russia, and the Dominican Republic in 2019. Opp'n 27. The government does not explain why Mr. López Bello's travel to and from foreign countries demonstrates that he fled the United States. *See Cornelson*, 2022 WL 970075, at *5 (rejecting government's contention that the defendant's decision to live in Brazil, instead of the Bahamas, or to cease traveling outside of Brazil altogether, "would qualify Mr. Cornelson as a traditional or constructive-flight fugitive.").

[2] The government argues throughout its opposition – in nearly a dozen pages borrowed from a sentencing memorandum filed on behalf of a different defendant in the case, and itself replete with references to a sealed document not provided to Mr. López Bello – that the alleged conduct had some connection to the United States, or involved other parties present in the United States. *See* Opp'n 16-27. But the government has not demonstrated that Mr. López Bello himself ever committed any wrongdoing while physically present in the United States – the essential element for a constructive-flight fugitive – and the Indictment disclaims that he has. *See* Superseding Indictment ¶¶ 21, 26, 30, 34, 40, 42, 44, 46.

*Bescond*, 24 F.4th at 772.  During that time, he "simply remain[ed] at home," *Bescond*, 24 F.4th at 772, where he "has no obligation to appear in the United States," *id.* at 767.

In its opposition, the government argues that Mr. López Bello has not "simply remained at home" because "he and his family resided by his own admission" in the United States "until shortly before the charges in this case." Opp'n 38.  This mischaracterizes the facts.  First, the government itself states that Mr. López Bello spent less than a third of his time in the United States.[3]  *Id.* at 47, 50.  Second, Mr. López Bello's last presence in the United States was not, as the government asserts, "shortly before the charges in this case."  *Id.* at 38.  It was more than two years before.  Third, once Mr. López Bello was designated, the United States was not his "home" by any definition.  To the contrary, he could not legally reenter the country.  The Kingpin Act explicitly amended the Immigration and Nationality Act, 8 U.S.C. § 1182, to statutorily restrict U.S. visa access for any individuals designated under the Kingpin Act.  *See* Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120 (enacting the Kingpin Act, and amending 8 U.S.C. § 1182).  Pursuant to this authority, the State Department would have revoked his visas as a matter of course.  Furthermore, any transaction in which Mr. López Bello engaged in the United States would have violated the Kingpin Act, the very crime Mr. López Bello is accused of committing in this case.  Thus, after making it illegal for Mr. López Bello to enter the country, the government is now perversely arguing that his inability to return should be held against him.  It was not Mr. López Bello's wish to be excluded from the country.  It was the government that shut the door.  Accordingly, he was not under any obligation to "return" here after being charged in 2019 with conduct committed abroad.  *See Bescond*, 24 F.4th at 772;

---

[3] Both of Mr. López Bello's prior visas – an L1 visa, and a B1/B2 visa – were temporary, non-immigrant visas.

*Cornelson*, 2022 WL 970075, at \*4.[4]  Indeed, he was not permitted to return.  The government

cannot now use a problem of its own making against Mr. López Bello.  *Cf.* Hr.'g Tr., *United*

*States v. Swen*, 07 Cr. 462 (LAP) (S.D.N.Y. May 28, 2015) (declining to disentitle defendant

who was litigating from abroad after being deported).

### C.      Mr. López Bello Has Not Taken Action to Distance Himself from the United States or Frustrate Arrest

Despite the fact that Mr. López Bello is neither a traditional nor constructive-flight

fugitive, the government argues that Mr. López Bello can be disentitled because, in the

government's view, he took "action . . . to distance [himself] from the United States or frustrate

arrest."  Opp'n 33 (quoting *Bescond*, 24 F.4th at 771).  This is incorrect.

As Judge Koeltl explained in *Cornelson*, a defendant's failure to leave his home country

does not "constitute[] affirmative action to distance himself from the United States and to

frustrate arrest."  *Cornelson*, 2022 WL 970075, at \*4.  The government asserts that Mr. López

Bello's decision to "stop[] traveling on flights directly to or from the United States" is evidence

of his efforts to "avoid the reach of OFAC and law enforcement."  Opp'n 11.  But the

---

[4] The only arguably contrary case cited by the government, *United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith*, 801 F. Supp. 984 (E.D.N.Y. 1992), involved an unsuccessful effort by the government to invoke the disentitlement doctrine in a civil forfeiture claim, a category of claimants explicitly addressed (and subsequently, carved out) by the Second Circuit in *Bescond*.  *See Bescond*, 24 F.4th at 772 (observing that Congress "extended fugitive status" in forfeiture cases to defendants who "decline[] to enter . . . the United States to submit to its jurisdiction" or "otherwise evade[] the jurisdiction of the court in which a criminal case is pending," but, "as this is not a forfeiture case, the forfeiture statute does not apply") (internal citations omitted).  Several other cases cited by the government confirm that a fugitive can only be deemed to have constructively fled the United States if he was present in the United States when committing the alleged offense.  *See, e.g., United States v. Eng*, 951 F.2d 461 (2d Cir. 1991) (civil forfeiture claimant was leader of street gang operating in Manhattan's Chinatown); *United States v. Forty-Five Thousand Nine Hundred Forty Dollars*, 739 F.2d 792 (2d Cir. 1984) (civil forfeiture claimant crossed U.S.-Canadian border without reporting $45,940 in currency); *United States v. Buck*, No. 13 Cr. 282 (VM), 2015 WL 195872, at \*1 (S.D.N.Y. Jan. 9, 2015) (Swiss banker charged with conspiring to defraud the IRS "travelled to the United States and met with U.S. Taxpayers in Manhattan").

government ignores that Mr. López Bello was *obligated* to cease traveling to the United States as a result of his designation in 2017.  That Mr. López Bello complied with the sanctions against him and stopped traveling to the United States two years before being charged does not prove he is a fugitive.  Nor does it distinguish him from the defendants in *Bescond* and *Cornelson*, both of whom likewise ceased traveling to the United States prior to being charged.  *United States v. Sindzingre*, No. 17 Cr. 0464 (JS), 2019 WL 2290494, at *6 n.4 (E.D.N.Y. May 29, 2019), *rev'd sub nom. United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021) (noting that Bescond traveled to the United States both before and after her alleged offense); *Cornelson*, 2022 WL 970075, at *3 (noting that Cornelson returned to Brazil after being deposed by the SEC and did not subsequently return to the United States).

As it did (unsuccessfully) in *Cornelson*, the government argues that Mr. López Bello's presence abroad constitutes an attempt to covertly escape from the reach of the law.  Opp'n 43 (quoting *Bescond*, 24 F.4th at 773).  But Mr. López Bello's presence abroad was entirely unrelated to the prosecution; it was caused by his designation, two years before he was charged. Since that time – during which he was prohibited from traveling to the United States, at the risk of violating the very sanctions he has now been charged with failing to comply with – he has lived in Venezuela, the country where he primarily resided even before he was sanctioned, where his home and family are, and where the majority of his businesses and assets are located, in a manner that even the government admits "may not be covert at this point."  Opp'n 43.  That Venezuela – like Brazil, in *Cornelson*, and France, in *Bescond* – does not extradite its citizens does not mean that Mr. López Bello's continued residence in his home country is "suspect," a "sanctuary," and an "escape from the reach of law."  *Id.* at 32, 43, 46 (quoting *Bescond*, 24 F.4th

at 773).  Nor should the government's opinion of that particular home country have any bearing

on the analysis.[5]

At bottom, the government's argument is that Mr. López Bello – despite not residing in

the United States when he was charged or having committed a crime here – is a fugitive because

he "refuses to travel here."  Opp'n 50.  But that is not the law.  Fugitivity does not extend to a

defendant "who stays at home abroad, without concealment or evasion."  *Bescond*, 24 F.4th at

773.[6]  Like Mr. López Bello, the defendants in both *Bescond* and *Cornelson* stopped traveling to

the United States prior to being charged and stayed in their non-extraditing home countries after

being charged.  *Id.*; *Cornelson*, 2022 WL 970075, at *4.  By the government's logic, both would

be fugitives.  The Second Circuit and Judge Koeltl held that they were not.[7]

**D.    The Government Conflates the Date on Which Mr. López Bello Was Sanctioned with the Date on Which He Was Charged**

In its opposition, the government argues that Mr. López Bello is a fugitive because he

"ceased to travel" to the United States "since early 2017, when he was designated by OFAC and

---

[5]  The government's characterization of the Venezuelan government as "malign" and "corrupt" are irrelevant to Mr. López Bello's status as a fugitive.  Opp'n 1.  The definition of fugitive does not change depending on the United States' relationship with the country in which the claimant resides.

[6] The federal forfeiture statute extends fugitivity to persons who "decline[ ] to enter . . . the United States to submit to its jurisdiction" or "otherwise evade[ ] the jurisdiction of the court in which a criminal case is pending against [them.]"  *Bescond*, 24 F.4th at 772 (quoting 28 U.S.C. § 2466(a)(1)(B)–(C)).  "But, as this is not a forfeiture case, the forfeiture statute does not apply."  *Bescond*, 24 F.4th at 772.

[7] The fact that Mr. López Bello has appeared on government wanted lists or posters, as the government emphasizes, *see* Opp'n 27–28, is completely irrelevant to whether Mr. López Bello is a fugitive for purposes of *Bescond*.  For example, Mr. Cornelson was subject to a similar international Red Notice once he was charged.  *Cornelson*, 2022 WL 970075, at *5.  And as discussed above, Mr. López Bello did not leave the United States because of criminal charges.  Moreover, the government neglects to mention that the government withdrew the notice that it relies on in its opposition, which inaccurately stated that Mr. López Bello was wanted in connection with "international narcotics trafficking," and replaced it – in August 2022 – with a notice that correctly states that Mr. López Bello is, in fact, charged with "sanctions evasion."  *Compare* https://www.ice.gov/most-wanted/lopez-bello-samark-jose (published August 2022) *with* https://www.ice.gov/news/releases/department-state-offers-5m-reward-information-leading-arrest-conviction-former (published October 2020).

when the offense conduct began," in what it characterizes as "an obvious effort to avoid the United States and the reach of U.S. authorities." Opp'n 41. Throughout the government's brief, Mr. López Bello's designation and the filing of criminal charges against him are treated as a single event, in an attempt to falsely portray Mr. López Bello's absence from the United States as intended to defeat the criminal charges in this case. *See*, *e.g.*, *id.* (arguing that "it is precisely because *he has been designated and charged* in the United States that Mr. López Bello has ceased traveling here)" Opp'n 41 (emphasis added); *see also id.* at 37 (referring, as if to a single incident, to Mr. López Bello's "designation and criminal prosecution").

The notion that Mr. López Bello left the United States in 2017 to evade criminal charges based on conduct that had not yet occurred is nonsensical. The government conflates the administrative sanctions imposed against Mr. López Bello with the criminal charges he now faces – two events that are separated by a gap of several years, and only the latter of which is relevant to the analysis of whether he is a fugitive. Mr. López Bello has always resided predominantly in Venezuela. He stopped visiting the United States because the government sanctioned him, not because of this case. And more importantly, the reason for his departure is irrelevant, given that Mr. López Bello – like the defendants in both *Bescond* and *Cornelson* – "stopped traveling to the United States" well before learning that his arrest was being sought. *Cornelson*, 2022 WL 970075, at *4; *Bescond*, 24 F.4th at 774.

### E.   Mr. López Bello's Ties to the United States Prior to the Imposition of Sanctions Do Not Affect the Fugitivity Analysis

Unable to demonstrate that Mr. López Bello meets either definition of fugitive set forth in *Bescond*, the government finally attempts to distinguish *Bescond* based on a host of irrelevant assertions, all intended to demonstrate that Mr. López Bello had a "plethora of ties" to the United States. Opp'n 39. These assertions include that: (1) Mr. López Bello owned real estate and other

9

assets located in the United States; (2) he frequently traveled to the United States before being designated; and (3) his wife and children traveled to (and at points, resided in) the United States. None of them affects the fugitivity analysis.

The government contends that each of these assertions "squarely distinguish[es]" this case from *Bescond*. Opp'n 33. Yet the government fails to demonstrate why any of them matter. Indeed, the government raised – and the Court rejected – a host of comparable arguments in *Cornelson*. *United States v. Cornelson*, No. 15 Cr. 516 (JGK) (S.D.N.Y. Dec. 13, 2021), ECF No. 25 at 13–15 (reply in support of defendant's motion to dismiss). The fugitive disentitlement doctrine punishes flight. It punishes defendants who leave or refuse to return to the United States after committing a crime within its borders. It does not punish defendants who own vacation homes in the United States, who travel to and from the United States prior to being charged with a crime, or whose families have other personal or professional connections to the United States.

***Ownership of property and other assets***. First, the government argues that Mr. López Bello is a fugitive because he owns "luxurious mansions, multimillion-dollar apartments, yachts, and vast business interests" based in the United States. Opp'n 1.

None of these assets or holdings renders Mr. López Bello a fugitive. The government is unable to point to a single case where the determination of whether a defendant was a fugitive (under any definition of the term) turned on whether the defendant owned property in the United States.[8] In *Cornelson*, Judge Koeltl dismissed a similar argument, observing that "[w]hile the

---

[8] As it did in *Cornelson*, the government claims support for its argument about the significance of Mr. López Bello's ownership of property from a parenthetical in *Bescond*, which reads:

Bescond was not in the United States while allegedly committing the charged conduct. *See In re Hijazi*, 589 F.3d at 412 (The fugitive disentitlement doctrine "does not apply . . . [to a defendant

Government points out that the defendant owns a vacation home in Florida, the Government does not explain why that makes a difference under the definition of either a traditional or constructive-flight fugitive."  2022 WL 970075, at *5 n.3.

      *Travel to the United States*.  Mr. López Bello's travel to the United States prior to his designation – all well outside the time period alleged in the Indictment – also does not make him a fugitive.  The defendants in both *Bescond* and *Cornelson* traveled extensively to the United States.  Indeed, Ms. Bescond traveled to the United States both before *and* after her alleged offense (in 2008, 2009, 2012, and 2014).  *Sindzingre*, 2019 WL 2290494, at *6 n.4.  Mr. Cornelson similarly traveled "regularly" to the United States for over twenty years, often – like Mr. López Bello – spending "months at a time" in the United States.  *United States v. Cornelson*, No. 15 Cr. 516 (JGK) (S.D.N.Y. Nov. 18, 2021), ECF No. 21 at 13–14 (government's memorandum in opposition).  There is no support for the government's assertion that travel that predates and is unrelated to the alleged offense governs whether a defendant is a fugitive.  And even the frequency and extent of that travel, as *Bescond* and *Cornelson* demonstrate, has no bearing on whether the defendant is deemed a fugitive.

      *Other Ties*.  The government concludes by describing numerous other ties Mr. López Bello had with the United States, which range from membership in social clubs to his children's

---

who] has never been in the country, . . . has never set foot in Illinois, and . . . owns no property in the United States.").

*Bescond*, 24 F.4th at 772 (quoting *In re Hijazi*, 589 F.3d at 412).  Neither *Bescond* nor *Hijazi* stand for the proposition that property ownership is somehow a substitute for the defendant's presence in the United States.  Nor does subsequent language in *Bescond* – discussing a defendant's "residence" in the context of the application of the discretionary factors – change this analysis, or the definition of fugitive.  *See* Bescond, 24 F.4th at 774 ("Bescond has no reason to travel here: it is not shown that she has residence, immigration status, job, or family in this country, and she allegedly committed the charged offense entirely from abroad.").  As discussed above, if Mr. López Bello can be said to have ever "resided" here, he certainly did not after the government barred him from the country in 2017.

enrollment in schools in the United States.  *See* Opp'n 5, 33-34.  The government does not explain why these links to the United States affect whether Mr. López Bello is a fugitive.  The government's reliance on a collection of irrelevant facts about Mr. López Bello's pre-designation activities – featuring his LinkedIn page and an email from an eyeglasses store at a Miami shopping mall – does little more than demonstrate that the government is grasping at straws.

      **F.**    **The Proceedings in *Stansell* Have No Bearing on This Motion**

Finally, the government incorrectly argues that Mr. López Bello has taken a contrary position in another case and is therefore barred from contesting disentitlement here.  Opp'n 43.

In *Stansell v. Revolutionary Armed Forces of Colombia*, the plaintiffs obtained a $318 million judgment against the Revolutionary Armed Forces of Colombia (the "FARC").  Default Judgment, *Stansell v. Revolutionary Armed Forces of Colombia*, No. 09 Civ. 2308 (M.D. Fla. June 15, 2010), ECF No. 233.  In February 2019, the plaintiffs in *Stansell* filed an *ex parte* motion in the Middle District of Florida seeking post-judgment writs of garnishment and execution against the assets of Mr. López Bello and certain related entities, alleging that Mr. López Bello and these entities are "agents or instrumentalities" of the FARC.  *See Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1347 (11th Cir. 2022).  Mr. López Bello has no connection to the FARC and has vigorously contested the case.  While the district court concluded that Mr. López Bello and his companies were agencies or instrumentalities of the FARC, the Eleventh Circuit reversed and remanded for a jury trial on the issue.  *Id.* at 1346. Earlier this month, the district court entered a final default judgment against Mr. López Bello, which he is appealing.  *Stansell v. Revolutionary Armed Forces of Colombia*, 19 Civ. 20896 (RNS) (S.D. Fla. Nov. 4, 2022), ECF Nos. 548 (final default judgment), 549 (notice of appeal).

Among the issues in *Stansell* that Mr. López Bello has vigorously contested is the application of the fugitive disentitlement doctrine.  In *Stansell*, the Eleventh Circuit stated – in a single sentence – that Mr. López Bello is "a fugitive" because he "has not turned himself in or been arrested," 45 F.4th at 1348.[9]  Mr. López Bello did not contest fugitivity in *Stansell* because, under Eleventh Circuit law – which is different from that of this Circuit – he did not have a colorable basis to do so.  But he has strenuously contested the application of the doctrine, largely for the reasons we set forth here.  For example, in the oral argument highlighted by the government, *see* Opp'n at 44, Mr. López Bello's counsel emphasized that "it's especially unjust [to disentitle Mr. López Bello] where the evidence is that López Bello left prior to the imposition of the OFAC sanctions in 2017, and couldn't return because the United States stripped his visa." Opp'n Ex. D at 7; *see also Stansell v. Revolutionary Armed Forces of Colombia*, 19 Civ. 20896 (RNS) (S.D. Fla. Oct. 11, 2022), ECF No. 519 at 15 (arguing that disentitlement would "strip López of his Due Process clause right to a hearing on his defense of his property").

But ultimately, whether the Eleventh Circuit has deemed Mr. López Bello a fugitive and whether Mr. López Bello was forced to accept that designation is immaterial because the law in this Circuit is different.  Contrary to the government's assertions, Mr. López Bello is not estopped from contesting disentitlement here.  The doctrine of judicial estoppel "applies where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v.*

---

[9] Despite ruling that Mr. López Bello is a fugitive, the Eleventh Circuit declined to disentitle him, remanding the issue back to the district court.  *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022).  Over Mr. López Bello's opposition, the district court subsequently concluded that the fugitive disentitlement doctrine should apply.  *See Stansell v. Revolutionary Armed Forces of Colombia*, 19 Civ. 20896 (RNS) (S.D. Fla. Nov. 4, 2022), ECF Nos. 523, 527.

*Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005).[10]  Mr. López Bello has never "advanced" the position

that he is a fugitive.  He has merely acknowledged that Eleventh Circuit law deems him to be

one, premised on a rationale that the Second Circuit considered – and rejected – in *Bescond*.

## II.   EVEN IF MR. LÓPEZ BELLO WERE A FUGITIVE, DISENTITLEMENT IS NOT WARRANTED

Even if the Court determines that Mr. López Bello is a fugitive, it should not disentitle

him.  A court may only exercise its discretion to disentitle a fugitive "if doing so would serve the

[fugitive disentitlement] doctrine's objectives."  *Bescond*, 24 F.4th at 771 (internal citations

omitted).  As in both *Bescond* and *Cornelson*, several factors weigh strongly against

disentitlement, including Mr. López Bello's "innocent residence as a foreign citizen abroad," *id.*

at 775; that his presence abroad is "unrelated to the American prosecution," *id.* at 773; that he

"allegedly committed the charged offense entirely from abroad," *id.* at 774; that he has brought a

"nonfrivolous challenge" to the charges against him, *id.* at 775; and his legitimate "reasons for

litigating from home," *id.* at 774.  The government fails to show otherwise, offering only generic

arguments that would apply equally to any foreign criminal defendant who declines to

voluntarily travel to the United States.

### A.   Disentitling Mr. López Bello Would Be "Too Harsh a Means of Ensuring Mutuality in the Litigation"

The government's first argument in favor of disentitlement is a lack of mutuality –

specifically, that "a ruling in López Bello's favor on the motion to dismiss would dispose of the

case, and a ruling against López Bello would have no adverse effect on him, instead permitting

him to maintain the status quo."  Opp'n 48.  This is of course true of any absent defendant

---

[10] Moreover, the government fails to point to any case law where the doctrine of judicial estoppel was applied to preclude a criminal defendant from asserting a defense in a criminal case based on statements made in a civil case, particularly where – as here – that adverse ruling was premised on a conflict between circuits on a question of law.

seeking to dismiss the charges against him, including the defendants in *Bescond* and *Cornelson*. But here, as in *Bescond*, disentitlement is "too harsh a means of ensuring mutuality in the litigation." 24 F.4th at 774. As the Supreme Court has counseled, "[t]he dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Degen v. United States*, 517 U.S. 820, 828 (1996).

Mr. López Bello did not flee, and "[i]t cannot be said" that he left the United States "to seize an unfair advantage or game the system." *Bescond*, 24 F.4th at 774. He is simply trying to clear his name by attacking the facially deficient charges against him. As set forth in our opening brief, the charges have restricted Mr. López Bello's travel, damaged his reputation, and harmed his business interests. Br. 23. Like the defendants in both *Cornelson* and *Bescond*, Mr. López Bello's efforts to challenge "whether the law [he] is alleged to have violated can reach [him] and [his] conduct in the first place" are not an attempt at gamesmanship. *Cornelson*, 2022 WL 970075, at *5 (quoting *Bescond*, 24 F.4th at 768, 774) (alterations in original). Put differently, dismissing a defective indictment that has been wrongfully pending for two years does not amount to a windfall for Mr. López Bello.

The government attempts to distinguish Mr. López Bello from the defendants in *Cornelson* and *Bescond* by arguing that Mr. López Bello has "valuable assets in the United States" and that he spent "months of the year living here benefitting professionally and personally." Opp'n 48. But these ties are not unique. As set forth above, they are quite similar to Mr. Cornelson's, who (like Ms. Bescond) traveled to the United States frequently, owned property in the United States, and had other ties to the United States. That Mr. López Bello has similar ties does not make it less appropriate for the Court to resolve his motion.

Nor should Mr. López Bello be disentitled, as the government argues, because he "actively avoids capture by U.S. law enforcement by having relocated to a country that will not extradite him." Opp'n 48. Mr. López Bello does not live in Venezuela because he is "avoid[ing] capture." *Id.* He lives in Venezuela because he was born there and is a Venezuelan citizen. The government cannot claim that Mr. López Bello is unfairly litigating this case from abroad when the government itself barred him from returning after he lawfully departed this country years before he was charged. Furthermore, *Bescond* teaches that a foreign country's non-extradition policy in fact weighs against disentitlement. 24 F.4th at 767 (holding that the "burdens" of disentitling the defendant were "especially weighty in view of France's non-extradition policy"). Like the defendants in *Cornelson* and *Bescond*, Mr. López Bello should not be disentitled based on fairness concerns.

### B.       Mr. López Bello Is Not Flouting the Judicial Process

The government's second erroneous contention in favor of disentitlement is that Mr. López Bello's failure to travel to the United States constitutes a "flouting [of] the judicial process." Opp'n 49. This is baseless. A foreign defendant who remains home, in a country that does not extradite its citizens, where "his government permits him to live freely," *Bescond*, 24 F.4th at 774, does not "flout" the judicial process by filing a pre-trial motion. As discussed above, the government's contention that Mr. López Bello has supposedly taken "irreconcilable positions" in this case and the *Stansell* litigation, Opp'n at 49, is simply not true.

### C.       Disentitling Mr. López Bello Would Not Discourage Flights from Justice

The government's third argument in favor of disentitlement – that adjudicating Mr. López Bello's motion "incentivize[s] . . . evading justice" or "damage[s] the efficient operation of the courts" – is equally unpersuasive. Opp'n 49. Mr. López Bello did not evade justice. Like

16

the defendants in *Cornelson* and *Bescond*, he was not in the United States during the commission

of the alleged offenses; he was not in the United States when the charges against him were

unsealed – or when he was indicted; and his home country protects him from extradition.

*Cornelson*, 2022 WL 970075, at *5; *Bescond*, 24 F.4th at 774.  Thus, "there exists no cohort of

fugitives who would perceive an adjudication of [Mr. López Bello's] motion[] as inducement or

inspiration to flee the jurisdiction of our courts."  *Bescond*, 24 F.4th at 774.  Even accepting

*arguendo* that "there might be a slight deterrence effect" to disentitling Mr. López Bello, any

such effect would be greatly "outweigh[ed] [by] the countervailing harm to the judicial process,

which seeks to resolve cases on the merits whenever possible."  *Cornelson*, 2022 WL 970075, at

*6 (quoting *Bescond*, F. 4th at 774) (internal citations omitted).[11]

### D. Adjudicating Mr. López Bello's Motion Would Cause Minimal Prejudice to the Government, Whereas Mr. López Bello Would Suffer Severe Prejudice If the Court Disentitled Him

The government's final argument in favor of disentitlement – prejudice – is no more

compelling.  The government has identified three ways in which adjudicating this motion would

prejudice the government: the fading of memories, "evidence grow[ing] stale," and the cost of

litigating this motion.  Opp'n 50–51.  The same could be said of any case, and indeed, they are

identical to objections that were raised and rejected in both *Bescond* and *Cornelson*.  *Bescond*, 24

F.4th at 774–75; *Cornelson*, 2022 WL 970075, at *6.  Given that the prosecution of Mr. López

Bello's co-defendants has already been delayed by several years – with trial for the next co-

---

[11] Because of the presumption of resolving cases on the merits, the second and third objectives of the fugitive disentitlement doctrine get less weight in the disentitlement analysis.  *See SEC v. Berger*, 322 F.3d 187, 192 (2d Cir. 2003) (noting that the "validity" of second and third factors was "called into question" by *Degen*, so the other two factors are the "most persuasive").

defendant scheduled for 2023 – the government has not demonstrated why litigating this motion introduces any meaningful prejudice to the government.  More importantly, the government gives no consideration to the severe prejudice Mr. López Bello would suffer if he were disentitled.  *Bescond*, 24 F.4th at 775 ("Disentitlement enables the government to coerce Bescond's presence in court by imposing financial, reputational, and family hardship regardless of her guilt or innocence, and regardless of whether the indictment charges violations of a statute that applies extraterritorially."); *see also Cornelson*, 2022 WL 970075, at *6 (same).  Apart from invoking the same generic claim of prejudice available in every disentitlement case, the government has not articulated any prejudice that weighs in favor of disentitlement.

## CONCLUSION

For the reasons stated herein and in our opening brief, the charges against Mr. López

Bello should be dismissed.


Dated:   November 14, 2022            Respectfully submitted,
          New York, New York

By:  /s/ Edward Y. Kim     

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel.: (212) 390-9550
Edward.Kim@KKLllp.com
Jonathan.Bolz@KKLllp.com
Georgia.Kostopoulos@KKLllp.com

ALEXEI SCHACHT
123 West 94th Street
New York, New York 10025
Tel.: (646) 729-8180
alexei@schachtlaw.net

*Attorneys for Samark José López Bello*