UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

SAMARK JOSE LOPEZ BELLO,
     a/k/a "Samark Lopez Delgado,"
     a/k/a "Sierra Lima,"

                        Defendant.

S5 19 Cr. 144 (AKH)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT SAMARK JOSÉ LÓPEZ BELLO'S MOTION TO DISMISS**

KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, New York 10110
Tel.: (212) 390-9550

ALEXEI SCHACHT
123 West 94th Street
New York, New York 10025
Tel.: (646) 729-8180

*Attorneys for Samark José López Bello*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ……………………………………………………………1

**ARGUMENT** ………………………………………………………….....…............3

    **I.**    **THE COURT SHOULD DISMISS THE KINGPIN ACT CHARGES** ……………...3

        A.    Section 1904(c) of the Kingpin Act Applies Only to U.S. Persons and Parties Located in the United States …………………………………………………… 3

            1.    The Structure and Text of the Kingpin Act ……………………………………… 3

            2.    The Legislative History of the Kingpin Act Supports the Statutory Text……..…… 8

            3.    The Kingpin Act Exempts Foreigners from Liability ……………………….. 10

            4.    The International Emergency Economic Powers Act Supports Mr. López Bello's Interpretation of the Statute …………………………………………………...13

        B.    The Presumption Against Extraterritoriality Requires Dismissal of the Kingpin Act Counts ……………………………………………………………….. 13

            1.    The Kingpin Act Does Not Apply to Foreign Conduct ………............................ 14

            2.    This Prosecution Is an Impermissible Application of the Kingpin Act to Foreign Conduct …………………………………………………………….....18

            3.    *Bowman* Is Inapplicable to the Kingpin Act ………………………………… 20

    **II.**    **THE COURT SHOULD DISMISS THE *KLEIN* CONSPIRACY CHARGE** ..…… 21

        A.    The Indictment Fails to Allege a *Klein* Conspiracy …………………………….21

        B.    Count 1 Is an Impermissible Extraterritorial Application of § 371 ..……………... 22

    **CONCLUSION** …………………………………………………………………. 24

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Anderson v. Binance*,
　　No. 20 Civ. 2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ...……....…… 19

*Bascuñán v. Elsaca*,
　　927 F.3d 108 (2d Cir. 2019) ……….…………………………………………… 19, 22, 23

*Boyce Motor Lines v. United States*,
　　342 U.S. 337 (1952) …………………………………………………………………… 20

*Carnero v. Bos. Sci. Corp.*,
　　433 F.3d 1 (1st Cir. 2006) …………………………………………………………… 15

*Chua Han Mow v. United States*,
　　730 F.2d 1308 (9th Cir. 1984) ……………….....……………………………………… 17

*Gebardi v. United States*,
　　287 U.S. 112 (1932) ……………………………………................................. 11, 12

*Kiobel v. Royal Dutch Petroleum Co.*,
　　569 U.S. 108 (2013) …………………………………………………………………… 14

*Liu Meng-Lin v. Siemens AG*,
　　763 F.3d 175 (2d Cir. 2014) ………………………………………………………… 15

*Morrison v. Nat'l Australia Bank Ltd.*,
　　561 U.S. 247 (2010) ………………………………………………………………… 16

*New York v. Trump*,
　　485 F. Supp. 3d 422 (S.D.N.Y. 2020) ………………………………………………... 7

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
　　937 F.3d 94 (2d Cir. 2019) ………………………………………………………….... 22

*RJR Nabisco, Inc. v. European Cmty.*,
　　579 U.S. 325 (2016) …………………………………………………………………… 14

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
　　277 F. Supp. 3d 521 (S.D.N.Y. 2017) ……………………………………………….. 18

*Suzlon Energy Ltd. v. Microsoft Corp.*,
　　671 F.3d 726 (9th Cir. 2011) ………………………………………………………… 7

*United States v. Al Kassar,*
    660 F.3d 108 (2d Cir. 2011) ……………………………………………… 17, 21, 23

*United States v. Amen,*
    831 F.2d 381 (2d Cir. 1987) …………………………………………………… 12

*United States v. Bass,*
    404 U.S. 336 (1971) …………………………………………………………... 6

*United States v. Bowman,*
    260 U.S. 94 (1922) …………………………………………………… *passim*

*United States v. Cafiero,*
    242 F. Supp. 2d 49 (D. Mass. 2003) …………………………………………… 12

*United States v. Coro,*
    No. 19 Cr. 144 (AKH) (S.D.N.Y. Mar. 17, 2021) ……..……………………........ 2, 19

*United States v. Delgado-Garcia,*
    374 F.3d 1337 (D.C. Cir. 2004) ……………………………………........ 20, 23

*United States v. Epskamp,*
    832 F.3d 154 (2d Cir. 2016) …………………………………………… 8, 16

*United States v. Garcia Sota,*
    948 F.3d 356 (D.C. Cir. 2020) …………………………………………… 20

*United States v. Goncalves,*
    No. 09 Cr. 335 (RJL) (D.D.C. June 6, 2011)...………………………………... 6

*United States v. Gotti,*
    457 F. Supp. 2d 411 (S.D.N.Y. 2006) …………………………………........ 1

*United States v. Hoskins,*
    902 F.3d 69 (2d Cir. 2018) ……….…………………………………….. *passim*

*United States v. Londono-Villa,*
    930 F.2d 994 (2d Cir. 1991) ……………………………………………… 17

*United States v. McCray,*
    7 F.4th 40 (2d Cir. 2021) ………………………………………………... 5

*United States v. Napout,*
    963 F.3d 163 (2d Cir. 2020) …………………………………………... 14, 23

iii

*United States v. Orozco-Prada,*
  732 F.2d 1076 (2d Cir. 1984) ………………………………………………….. 17

*United States v. Oseguera Gonzalez,*
  507 F. Supp. 3d 137 (D.D.C. 2020) ……………………………………………… 13

*United States v. Schultz,*
  17 F.3d 723 (5th Cir. 1994) ……………………………………………………... 7

*United States v. Skelos,*
  No. 15 Cr. 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ……..……...20

*United States v. Van Buren,*
  599 F.3d 170 (2d Cir. 2010) …………………………………………………….... 8

*United States v. Van Der End,*
  943 F.3d 98 (2d Cir. 2019) ……………………………………………………… 9

*United States v. Vilar,*
  729 F.3d 62 (2d Cir. 2013) …………………………………………………….... 20

*United States v. Yakou,*
  428 F.3d 241 (D.C. Cir. 2005) …………………….………………………….. 5, 7

*United States v. Yousef,*
  327 F.3d 56 (2d Cir. 2003) ……………………………………………………... 20

*United States v. Zarrab,*
  No. 15 Cr. 867 (RMB), 2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) ……….............. 13

*WesternGeco LLC v. ION Geophysical Corp.,*
  138 S. Ct. 2129 (2018) …………………………………………………………...14

## Statutes, Rules, and Regulations

2 U.S.C. § 2a(a) ………………………………………………………………….. 7

7 U.S.C. § 1 …...………………………………………………………………... 23

15 U.S.C.
  § 78dd-1 ………………………………………………………. 16, 17
  § 78dd-2 ……………………………………………………. 6, 10, 16
  § 78dd-3 ……………………………………………………. 6, 10, 16
  § 78ff(c) ……………………………………………………… 6, 10

18 U.S.C.
    § 32(a) ……………………………………………………………………… 20
    § 371 …………………………………………………………………… *passim*
    § 841(a) …………………………………………………………………… 16
    § 959(b)(2) ………………………………………………………………… 16
    § 1114 ……………………………………………………………………… 17
    § 1344 ……………………………………………………………………… 7
    § 2250 ……………………………………………………………………… 8
    § 2510 …….………………………………………………………………… 7
    § 3238 ……………………………………………………………………… 20

21 U.S.C.
    § 841(a)(1) ….……………………………………………………………… 17
    § 848 ……………………………………………………………………… 12
    § 952 ……………………………………………………………………… 17
    § 959 …………………………………………………………………… 8, 17
    § 1902 ……………………………………………………………………… 17
    § 1903 ……………………………………………………………………… 17
    § 1904 …………………………………………………………………… *passim*
    § 1906(a) …………………………………………………………………… 6, 14
    § 1907 ……………………………………………………………………… 4

22 C.F.R. § 129.2 ……………………………………………………………… 17

22 U.S.C. § 2778 ……………………………………………………………… 5, 7

31 C.F.R.
    § 598 (2020) ……………………………………………………………… 6
    § 598 (2022) ……………………………………………………………… 6

46 U.S.C. § 70503(b) ………………………………………………………… 9

50 U.S.C.
    § 1701 …………………………………………………………………… 13
    § 1705 …….……………………………………………………………… 13

## **Other Authorities**

Annalisa Leibold, *Extraterritorial Application of the FCPA Under International Law*, 51
Willamette L. Rev. 225 (2015) …………………….………………………… 6

Narcotics Trafficking Sanctions Regulations and Foreign Narcotics Kingpin Sanctions
Regulations, 86 Fed. Reg. 26661 (May 17, 2021) ………..……………………… 6

H.R. Conf. Rep. 106-457 (1999) …………………………………….……… 8, 9, 15

This reply brief is respectfully submitted in further support of Mr. López Bello's motion to dismiss.

## PRELIMINARY STATEMENT

Much as it did in its initial response, the government again urges the Court not to consider the merits of our motion.  However, this is not a case where the government can simply rely on the fact that "the indictment tracks the language of the statute and alleges all the necessary elements."  Gov. Merits Opp'n at 1.[1]  Nor can it argue that these issues should be resolved by a jury or by the Court during jury instructions.  *See id.* at 1, 7.  There is no reason to allow the Indictment to stand when, even under the government's proffered facts, the charges against Mr. López Bello fail as a matter of law.  *See United States v. Gotti*, 457 F. Supp. 2d 411, 425 (S.D.N.Y. 2006) (pretrial motion to dismiss appropriate when the defendant argued that, even "accepting the Government's version of events," his conduct did not satisfy the elements of the criminal statute).

Moreover, the Court should reject the government's attempt to force Mr. López Bello to bear the weight of the government's criticism of the Venezuelan government.  *See* Gov. Merits Opp'n at 2–3.  Notwithstanding what the government may think of the current state of affairs in Venezuela, Mr. López Bello's arguments deserve fair consideration.  Our motion seeks the Court's help to ensure that Mr. López Bello, a foreign citizen living abroad, not be prosecuted unfairly.

We have argued that: (1) a sanctioned individual cannot violate the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act" or "Act") from abroad; (2) the charges against Mr.

---

[1] Citations to "Gov. Merits Opp'n" refer to the government's January 13, 2023 opposition brief, ECF No. 265; "Br." to our opening brief, ECF No. 255; "Reply Br." to our prior reply brief, ECF No. 258; and "Ind." and "Indictment" to the Fifth Superseding Indictment, ECF No. 67.

López Bello are impermissibly extraterritorial; and (3) the government has not alleged a valid

*Klein* conspiracy, where the alleged object of the conspiracy is a violation of law rather than a

fraud on the United States.  The government's response on all points is mistaken.

First, the Kingpin Act does not cover conduct by foreigners located abroad.[2]  The text,

structure, and legislative history confirm that the Act only reaches conduct taken by U.S. persons

or within the United States.  Like other regulatory regimes, the Kingpin Act treats U.S. and

foreign persons differently: it subjects foreign persons to economic sanctions designations and

the blocking of their U.S. property.  It then prohibits U.S. persons and those within the United

States from dealing or transacting in that property.

Second, the presumption against extraterritoriality bars Mr. López Bello's prosecution

under the Kingpin Act counts.  In arguing to the contrary, the government: (1) misplaces its

reliance on an outdated decision, *United States v. Bowman*, 260 U.S. 94 (1922); (2) fails to

meaningfully grapple with how the prevalent extraterritoriality framework applies; and (3) cites

domestic conduct that is outside of 21 U.S.C. § 1904(c)'s focus.  Setting aside this smokescreen

of inapplicable law and conduct, a proper application of extraterritoriality law shows that

§ 1904(c) does not apply to foreigners like Mr. López Bello, who were located abroad during the

alleged conduct.

Lastly, the government has not alleged a valid *Klein* conspiracy.  Our opening brief does

not argue that the government is barred from alleging a *Klein* conspiracy based on impairing a

lawful function of the U.S. government.  Rather, it argues that the Indictment fails to allege such

---

[2] The Court recognized as much at the sentencing of Mr. López Bello's codefendant, a U.S. person who pleaded guilty to transacting or dealing in blocked property while in the United States.  *See United States v. Coro,* No. 19 Cr. 144 (AKH) (S.D.N.Y. Mar. 17, 2021), Sentencing Tr. at 39 (the Court noting that the Kingpin Act "applies to our citizens and our residents.  It can't apply to people abroad.  If Argentina wanted to give aid to Venezuela, that is not the United States' ability to stop them.").

a conspiracy, even under this Circuit's liberal standards.  Further, as with the Kingpin Act

charges, Count 1 is an impermissible extraterritorial application of 18 U.S.C. § 371.

**ARGUMENT**

**I.**     **THE COURT SHOULD DISMISS THE KINGPIN ACT CHARGES**

     In our opening brief, we argued that Mr. López Bello cannot be criminally prosecuted

under the Kingpin Act because he is neither a U.S. person, nor is he alleged to have acted within

the United States.  *See* Br. at 4–13.  The government's response is that Mr. López Bello, despite

being a foreign person who acted entirely from abroad, committed such a violation.  The

government is mistaken, and the Kingpin Act counts should be dismissed.

>**A.**     **Section 1904(c) of the Kingpin Act Applies Only to U.S. Persons and Parties Located in the United States**

     The parties agree that only a "transaction or dealing by a United States person" or "within

the United States" can give rise to a violation of the Kingpin Act.[3]  21 U.S.C. § 1904(c); *see also*

Br. at 9; Gov. Merits Opp'n at 9, 14–15.  Yet the government claims that Mr. López Bello

engaged in such transactions and dealings, despite being abroad at all relevant times.  The Court

should reject this argument.  As shown in our opening brief, criminal sanctions under the

Kingpin Act are applicable only to U.S. persons or parties located in the United States.  *See* Br.

at 4–13.

>          1.     The Structure and Text of the Kingpin Act

     Throughout its brief, the government notes that the Kingpin Act was intended to counter

a foreign threat.  *See, e.g.*, Gov. Merits Opp'n at 13.  We agree that the Kingpin Act was aimed

---

[3] Notably, the government concedes that liability for conspiring or attempting to violate the Kingpin Act, like a substantive violation, is limited to transactions or dealings by U.S. persons or within the United States.  *See* Gov. Merits Opp'n at 15 n.3.

3

at financially disrupting those involved in the international drug trade.  But the government obscures the two distinct means by which the Act was meant to achieve this goal:

First, the Act allows the government to designate foreigners involved in the drug trade and then blocks their U.S. property.  *See* 21 U.S.C. § 1904(b).  Second, it prohibits transactions and dealings in such property by U.S. persons or within the United States.  *See id.* § 1904(c).[4] To describe who is liable under these separate provisions, the Kingpin Act separately defines both "foreign person" and "United States person."  *See id.* § 1907(2), (6).

For the provisions related to the sanctions designation authority and the blocking of assets, the Act repeatedly uses the term "foreign person," clarifying that the Kingpin Act blocks property within the United States that is owned or controlled by:

> (1) any significant **foreign** narcotics trafficker [designated by the President];
>
> (2) any **foreign person** that the Secretary of the Treasury, in consultation with [other executive departments] designates as materially assisting . . . the international narcotics trafficking activities of a significant foreign narcotics trafficker . . . ;
>
> (3) any **foreign person** that the Secretary of the Treasury, in consultation with [other executive departments] designates as owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker . . . or **foreign persons** designated by the Secretary of the Treasury . . . ; and
>
> (4) any **foreign person** that the Secretary of the Treasury, in consultation with [other executive departments] designates as playing a significant role in international narcotics trafficking.

*Id.* § 1904(b)(1)-(4) (emphasis added).  These provisions are immediately followed by § 1904(c), which omits any reference to foreign persons or entities, and instead uses the term "United States person" to prohibit the following conduct:

---

[4] The title of 21 U.S.C. § 1904, "Blocking assets and prohibiting transactions," confirms that these are two distinct mechanisms.

(1) Any transaction or dealing by a **United States person**, or **within the United States**, in property or interests in property of any significant foreign narcotics trafficker . . .

(2) Any transaction or dealing by a **United States person**, or **within the United States**, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate, any of the prohibitions contained in [the Kingpin Act.]

*Id.* § 1904(c)(1)-(2) (emphasis added).  The fact that the Kingpin Act defines "foreign person" and "United States person," and then limits the use of those terms to their respective provisions, shows that § 1904(c) applies only to U.S. persons or parties located within the United States.  *See United States v. McCray*, 7 F.4th 40, 46 (2d Cir. 2021) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (internal quotation marks omitted)).

Confronted with the clear language of the statute, the government makes several arguments.

First, the government contends that a foreigner can violate the Kingpin Act by transacting *with* a U.S. person or by committing acts abroad that have some effect within the United States. *See* Gov. Merits Opp'n at 15–16, 27.  But the statutory provisions at issue do not support either interpretation.  *See* 21 U.S.C. § 1904(c)(1), (2) (prohibiting certain conduct "**by a United States person**" and "**within the United States**" (emphasis added)).  Therefore, Mr. López Bello – a foreign person – cannot be liable for engaging in a transaction or dealing with a U.S. person or a person located within the United States.  *Cf. United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2005) (in the context of the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, "the congressional choice to limit liability to 'U.S. persons[ ]' is highly significant and inconsistent with catching the non-U.S. person who happens to engage in brokering activities with a 'U.S.

person'").[5]  Similarly, under the plain text of the statute, because Mr. López Bello did not set foot in the United States during the alleged offense, he cannot be said to have engaged in conduct "within the United States."[6]  *Cf. United States v. Goncalves*, No. 09 Cr. 335 (RJL) (D.D.C. June 6, 2011), ECF No. 434 at 7–8, 29  (applying the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-3(a), U.K. citizen did not engage in conduct "while in the territory of the United States" by mailing a corrupt purchase agreement to the United States).[7]

Second, the government cites to the Kingpin Act's enforcement provision, 21 U.S.C. § 1906(a), which states that "[w]hoever willfully violates the provisions of this chapter" will be criminally liable.  *See* Gov. Merits Opp'n at 12.  But the Kingpin Act is not alone in containing a broad liability provision.  Criminal liability under the FCPA and the AECA is similarly applicable to "any" violator of those statutes.  *See* 15 U.S.C. §§ 78dd-2(g), 78dd-3(e), 78ff(c); 22 U.S.C. § 2778(c).  Yet because the underlying statutes themselves are limited in scope, courts

---

[5] Presently, a person can violate the Foreign Narcotics Kingpin Sanctions Regulations (the "Kingpin Act Regulations" or "Regulations") by "caus[ing] a violation" of the Regulations, but this was not the law at the time of the Indictment.  *Compare* 31 C.F.R. §§ 598.203(a), 598.204 (2020), *with* 31 C.F.R. § 598.204(a) (2022).  Even if, as the Office of Foreign Assets Control ("OFAC") stated in promulgating the new Regulations, this was intended to "clarify[ ]," rather than change, the law, *see* 86 Fed. Reg. 26661, 26662 (May 17, 2021), this demonstrates ambiguity and would militate in favor of applying the rule of lenity.  *See United States v. Bass*, 404 U.S. 336, 348 (1971) (noting the principle that criminal statutes must give "fair warning . . . to the world . . . of what the law intends to do if a certain line is passed" and finding that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant" (internal quotation marks omitted)).

[6] In an effort to establish U.S. conduct, the government proffers an assortment of alleged acts.  *See, e.g.*, Gov. Merits Opp'n at 3.  In describing these acts, we note that the government omits potentially important details, including, in some instances, the extent of Mr. López Bello's direct involvement.  Furthermore, many of these allegations are absent from the Indictment.  Paragraph 4 of the Indictment, which the government cites as the authority for a litany of supposed domestic acts, *see* Gov. Merits Opp'n at 10, alleges only that Mr. López Bello "paid U.S. persons and U.S.-based companies for private flights and other flight-related services by, among other means, using associates to deliver bulk cash in Caracas, Venezuela to be smuggled into the United States."  Ind. ¶ 4.

[7] *See* Annalisa Leibold, *Extraterritorial Application of the FCPA Under International Law*, 51 Willamette L. Rev. 225, 246–47 (2015) (describing the proceedings in *Goncalves*, which imply that for a foreigner to be liable under the FCPA, "the act . . . must occur while the individual is physically present in the United States").

have held that neither prohibits foreign conduct by foreign persons.  *See United States v. Hoskins*, 902 F.3d 69, 84–95 (2d Cir. 2018) (FCPA); *Yakou*, 428 F.3d at 252–54 (brokerage provision of the AECA).  Here, the government itself concedes that "the text of the law only reaches a foreigner who engages in one of the prohibited transactions prescribed by the act." Gov. Merits Opp'n at 14.  Since the text of § 1904(c) specifically requires the government to prove that the perpetrator either was a U.S. person or committed the act within the United States, any act committed by a non-U.S. person outside the United States is, simply put, not a prohibited transaction proscribed by the Act.  *Cf. United States v. Schultz*, 17 F.3d 723, 725 (5th Cir. 1994) (under the bank fraud statute, 18 U.S.C. § 1344, "proof of FDIC insurance is not only an essential element" of the crime, "but it is also essential for the establishment of federal jurisdiction").

The government cites several cases that relied on broad criminal provisions to determine a statute's reach.  *See* Gov. Merits Opp'n at 12–13.  But these cases do not support the government's argument.  For example, in *Suzlon Energy Ltd. v. Microsoft Corp.*, the court interpreted the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, to reach foreign citizens in part because Congress did not "add[ ] other requirements, such as U.S. citizenship" to its provisions, which "indicates that it did not want to impose any additional limitations."  671 F.3d 726, 729 (9th Cir. 2011).  Here, Congress included just such a limitation in § 1904(c).  Similarly, in *New York v. Trump*, the court relied on 2 U.S.C. § 2a(a)'s broad use of the term "persons" only after mentioning that while "the U.S. Code is filled with other statutes that use terms that plainly exclude illegal aliens," the statute at issue had no such limitation.  485 F. Supp. 3d 422, 472 (S.D.N.Y. 2020).  Again, § 1904(c) is not silent as to whether it reaches

7

foreign parties: it states explicitly that it applies only to U.S. persons and those acting within the United States.[8]

                 2.      <u>The Legislative History of the Kingpin Act Supports the Statutory Text</u>

Given the clear statutory language, there is no need to look to the legislative history of the Kingpin Act.  Ultimately, however, the legislative history supports a plain reading of the statutory text.  *See* Br. at 11–12.

Notably, the government is unable to reconcile its reading of the statute with the conference report describing the Act as having two components:

> (a) All assets of the kingpins and their organizations and subordinates subject to United States jurisdiction would be blocked; other law enforcement tools such as seizure and forfeiture would be available if appropriate.

> (b) **U.S. individuals and companies** would be prohibited from engaging in unlicensed transactions, including any commercial or financial dealings, with any of the named kingpins and their organizations and subordinates.

H.R. Conf. Rep. 106-457, at 46 (1999) (emphasis added).  The legislative history thus confirms what the text and structure of the statute make clear: designated foreigners are subject to blocking sanctions, while only U.S. persons and those located in the United States are subject to the transactional prohibitions.[9]

---

[8] The government also unpersuasively cites to *United States v. Epskamp*, 832 F.3d 154, 163 (2d Cir. 2016) and *United States v. Van Buren*, 599 F.3d 170, 173 (2d Cir. 2010), which interpreted 21 U.S.C. § 959 and the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250, respectively.  When these cases were decided, neither statute contained any textual limitations on whether it applied domestically or to foreign persons.

[9] As to the other legislative history marshalled in our opening brief, the government contends that it is taken out of context.  Gov. Merits Opp'n at 18–20.  Specifically, the government claims that when Representative Nadler was discussing § 1904(c) applying only to U.S. persons, he was commenting on due process concerns as applied to Americans.  *Id.* at 19.  But this underscores Mr. López Bello's point: Congress was discussing these concerns because the Act applies predominantly to U.S. persons.  Further, the government also claims that the remarks of Senator Coverdell are off point because, prior to issuing the cited statement, he said that "[a]ny foreign entity which appears on the list would be prohibited from conducting any economic activity with the United States."  *Id.* at 20 (internal quotation marks omitted).  Again, the government proves Mr. López Bello's point.  Since all U.S. persons are prohibited from

In its opposition, the government fails to muster any legislative history indicating that the Kingpin Act's prohibitions apply to foreigners outside the United States. Instead, it quotes various portions of the Act and legislative history showing that the statute was enacted to generally combat a foreign threat. *See, e.g.*, Gov. Merits Opp'n at 18 (quoting H.R. Conf. Rep. 106-457, at 43 ("The bottom line objective of these provisions is to bankrupt and disrupt the major narcotics trafficking organizations.")).

However, this objective is entirely consistent with § 1904(c)'s clearly stated application only to U.S. persons and those located within the United States. As noted above, the Act accomplishes that goal by blocking designated parties' U.S. property, not by exposing foreigners to criminal liability in the United States. Notably, in other statutes where Congress has chosen to establish liability for foreign conduct involving narcotics trafficking, it has done so explicitly. *See* 46 U.S.C. § 70503(b) ("Prohibited acts" section of the Maritime Drug Law Enforcement Act ("MDLEA") providing that it "exten[ds] beyond territorial jurisdiction" and "applies even though the act is committed outside the territorial jurisdiction of the United States"); *United States v. Van Der End*, 943 F.3d 98, 105 (2d Cir. 2019) (applying the MDLEA to a foreigner on board a stateless vessel). Congress's decision not to establish liability for foreign persons acting abroad in § 1904(c) cannot simply be ignored.

Thus, the conduct cited by the government – which allegedly occurred while Mr. López Bello was located overseas – does not constitute transactions or dealings within the United States for purposes of the Kingpin Act.

---

transacting with designated parties, the Kingpin Act effectively freezes any economic activity within the United States involving that property. But that says nothing about whether the Kingpin Act allows for the prosecution of designated parties for actions taken while abroad.

### 3.      The Kingpin Act Exempts Foreigners from Liability

The government's argument that the Second Circuit's decision in *Hoskins* does not bar the application of the Kingpin Act to Mr. López Bello is similarly misguided.  While the government has disclaimed reliance on a conspiracy or aiding-and-abetting theory as a means of prosecuting Mr. López Bello for conduct for which he could not be substantively liable, *Hoskins* remains instructive and supports our reading of the Kingpin Act.

*Hoskins* states that "conspiracy and complicity liability will not lie when Congress demonstrates an affirmative legislative policy to leave some type of participant in a criminal transaction unpunished."  902 F.3d at 80.  As we argued in our opening brief, this principle bars the government from prosecuting Mr. López Bello – a foreign person engaged in foreign conduct – under a conspiracy or aiding-and-abetting theory based on his alleged transactions and dealings with U.S. persons or those located within the United States.  *See* Br. at 4–13.  In other words, if Mr. López Bello is to be liable for conspiring to violate the Kingpin Act, he must either be a U.S. person or have acted within the United States.

In its opposition, the government makes clear that it believes Mr. López Bello is substantively liable.  *See* Gov. Merits Opp'n at 15 n.3 ("For a foreigner to be held liable under [§ 1904(c)(1) or § 1904(c)(2), the latter of which contains the Kingpin Act's conspiracy provision], the foreigner must still engage in a transaction either with U.S. persons or within the United States.").  The government makes several arguments based on *Hoskins* for why this is so. None have merit.

First, the government argues that unlike the FCPA, the Kingpin Act contains a broad criminal enforcement provision.  *See* Gov. Merits Opp'n at 22.  As discussed above, the government overlooks the fact that the FCPA's enforcement provisions similarly apply to "any" violator of the statute.  *See* 15 U.S.C. §§ 78dd-2(g), 78dd-3(e), 78ff(c).  Yet like the Kingpin Act

in § 1904(c), the FCPA's substantive provisions limit its applicability to "American citizens, nationals, and residents," "American companies," "agents, employees, officers, directors, and shareholders of . . . American companies," and "foreign persons . . . present in the United States." *Hoskins*, 902 F.3d at 85.

Second, the government claims that the legislative history of the FCPA shows Congress's intent to immunize foreign parties, while the Kingpin Act's does not. *See* Gov. Merits Opp'n at 22–23. As discussed above, the Kingpin Act's legislative history demonstrates that Congress intended the Act's prohibitions to apply only to U.S. persons and for acts committed while located in the United States. *See* pages 8–9, *supra*; Br. at 11–12. The legislative history cited by the government does not show that the transactional prohibitions were meant to apply to foreign parties located abroad.

Third, the government notes that the Kingpin Act contains its own conspiracy provision in § 1904(c)(2). *See* Gov. Merits Opp'n at 22. This is irrelevant because that provision, by the government's own concession, applies only to transactions and dealings by "United States person[s]" and "within the United States." 21 U.S.C. § 1904(c)(2); *see also* Gov. Merits Opp'n at 15 n.3. As with § 371 in *Hoskins*, the government may not thwart Congress's intent to limit the Act's provisions by charging Mr. López Bello with a conspiracy to violate those sections. *See Hoskins*, 902 F.3d at 83–84. If anything, the fact that Congress included the U.S. limitations within the Act's own conspiracy provision supports Mr. López Bello's argument that the statute does not cover foreign parties who act outside the United States.

Fourth, the government claims that the cases relied on by the *Hoskins* court, in particular, *Gebardi v. United States*, 287 U.S. 112 (1932), militate towards applying the Kingpin Act to Mr. López Bello's conduct. *See* Gov. Merits Opp'n at 23. Specifically, the opposition brief notes

that, unlike the defendant in *Gebardi*, Mr. López Bello is not a victim of the criminal conspiracy in question. *See id.* But neither was Mr. Hoskins, who was alleged to have joined a conspiracy involving foreign bribes. Further, the *Gebardi* court did not rely on the fact that the defendant could be seen as a victim of the relevant statute. Instead, as explained in *Hoskins*, *Gebardi* held that when would-be defendants' participation is "an inseparable incident" of every violation of the statute, congressional silence as to those defendants' liability amounts to a "conferral of immunity." *Hoskins,* 902 F.3d at 80.[10] Sanctioned individuals like Mr. López Bello are necessarily involved in every violation of the Kingpin Act. Thus, Congress's silence on this issue militates against allowing the government to prosecute Mr. López Bello. *See* Br. at 10–11.

Lastly, the government asserts that it would be illogical for "Congress, in imposing a law to sanction narcotics traffickers, [to] simultaneously s[eek] to provide them a safe harbor." Gov. Merits Opp'n at 24. Again, the government misses the mark, since the same can be said of the FCPA, which was passed to combat foreign bribery yet exempts bribe recipients from liability. "[T]he laws of the United States cannot and do not automatically circumscribe the conduct of all crimes contemplated or committed around the globe." *United States v. Cafiero*, 242 F. Supp. 2d 49, 54 (D. Mass. 2003). Congress can reasonably limit the extent and method by which it regulates foreign conduct, which may involve nuanced jurisdictional and comity considerations. In the Kingpin Act, Congress chose to limit the liability of foreigners to transactions taken while within the United States.

---

[10] Similarly, in *United States v. Amen*, 831 F.2d 373 (2d Cir. 1987), the other decision principally relied upon by the *Hoskins* court, the defendants were employees of a criminal enterprise. The Second Circuit applied *Gebardi* to bar their prosecution for conspiring and aiding and abetting that enterprise's "kingpin" under the continuing criminal enterprise statute, 21 U.S.C. § 848, finding that it would "disrupt the carefully defined statutory gradation of offenses," because "the low-level henchman would find himself subject to the more severe penalties applicable to the 'kingpin.'" *Hoskins*, 902 F.3d at 80 (describing *Amen*'s holding). As in *Gebardi* and *Hoskins*, the court in *Amen* did not rely on a principle that the defendants could be seen as victims of the relevant criminal statute.

4.    The International Emergency Economic Powers Act Supports Mr. López Bello's Interpretation of the Statute

The government also contends that the Kingpin Act applies to foreign persons outside the United States because it was modeled on the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, which has been construed to reach foreign conduct.  Gov. Merits Opp'n at 25.  Even assuming IEEPA applies to foreign conduct, the government fails to mention the dispositive difference between the statutes.[11]  Specifically, unlike the Kingpin Act, IEEPA's prohibitions are not expressly limited to the United States and U.S. persons.  *Compare* 21 U.S.C. § 1904(c), *with* 50 U.S.C. § 1705(a).  Since the Kingpin Act was modeled after IEEPA, the inclusion of these limitations in the Kingpin Act was deliberate, and the statutes were meant to differ in the scope of their extraterritorial reach.  *See* Br. at 10.

**B.    The Presumption Against Extraterritoriality Requires Dismissal of the Kingpin Act Counts**

The presumption against extraterritoriality further warrants dismissal of the Kingpin Act counts.  Although Mr. López Bello was at all relevant times abroad, the opposition brief argues that this prosecution is a domestic application of the Kingpin Act.  *See* Gov. Merits Opp'n at 27–29.  Then, instead of applying the well-settled framework for determining the extraterritorial reach of statutes, the government cites the outdated *Bowman* decision to argue that no presumption of extraterritoriality applies.  *See id.* at 29.  Both arguments are wrong.  An application of the governing extraterritoriality framework shows that § 1904(c) does not apply to foreign conduct, and the charges in this case are not a domestic application of the Kingpin Act.

---

[11] The IEEPA cases the government cites do not address whether the Kingpin Act's prohibitions apply to foreign conduct.  *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 153 (D.D.C. 2020) (applying IEEPA case law to determine the *mens rea* requirement for a violation of the Kingpin Act, since both statutory schemes prohibited transactions with designated entities); *United States v. Zarrab*, No. 15 Cr. 867 (RMB), 2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) (applying IEEPA to foreign conduct).

In our opening brief, we described the two-step framework that courts use to analyze extraterritoriality issues. *See* Br. at 14. As explained, the presumption against extraterritoriality is rebutted only if the statute's text, broader statutory scheme, and legislative history contain a clear indication that the statute was meant to apply to foreign conduct. *Id.* If the presumption is not rebutted, then a court must determine whether "the case involves a domestic application of the statute . . . by looking to the statute's 'focus.'" *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). In turn, the focus of a statute "is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *United States v. Napout*, 963 F.3d 163, 178 (2d Cir. 2020) (internal quotation marks omitted). Moreover, a court "do[es] not analyze the provision at issue in a vacuum," but instead looks to how "the statutory provision at issue works in tandem with other provisions." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018).

       1.      The Kingpin Act Does Not Apply to Foreign Conduct

The statutory text confirms that Congress limited the prohibitions of the Kingpin Act to certain transactions or dealings "within the United States" and "by a United States person." 21 U.S.C. § 1904(c). This is far from the "clear, affirmative indication" that courts require for a statute to apply to foreign conduct. *RJR Nabisco, Inc.*, 579 U.S. at 337.[12] It is just the opposite.

What is more, the Kingpin Act's broader statutory scheme confirms that § 1904(c) does not apply to foreign parties acting abroad. When Congress wanted certain provisions of the Kingpin Act to apply to foreign persons, it clearly said so. *See* pages 4–5, *supra*; 21 U.S.C.

---

[12] The fact that the Kingpin Act's enforcement provision applies to "[w]hoever" willfully violates the statute, 21 U.S.C. § 1906(a)(1), does not impact the extraterritoriality analysis. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013) ("[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality.").

§ 1904(b).  As already noted, the Kingpin Act applies to foreigners with respect to sanctions designations and the blocking of U.S. property, but the prohibitions on transacting in that property apply only to U.S. persons and to conduct within the United States.  *See Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014) ("[I]t would be superfluous for a statute to note that a particular provision applies extraterritorially if the entire statute had extraterritorial reach." (internal quotation marks omitted)).  Because § 1904(b) applies to foreigners, "the logical inference is that [§ 1904(c)], enjoying no such explicit grant of extraterritorial application, has none."  *Id.*

Lastly, the legislative history also supports the notion that § 1904(c) applies only domestically.  As mentioned above, the conference report specifically delineates which parties are subject to which portions of § 1904.  *See* page 8, *supra*.  Foreigners are subject to blocking sanctions, while "U.S. individuals and companies" are prohibited from certain transactions.  *See* H.R. Conf. Rep. 106-457, at 46.  Several members of Congress further confirmed that the transactional prohibitions apply only to U.S. persons.  *See* Br. at 11–12.  Conspicuously absent from the legislative history, however, is any discussion of these prohibitions applying to foreign parties located abroad.  One would think Congress, well-attuned to extraterritoriality issues, would at least discuss the extraterritorial reach of § 1904(c) if it was meant to apply to foreign conduct.  *Cf. Carnero v. Bos. Sci. Corp.*, 433 F.3d 1, 15 (1st Cir. 2006) (emphasizing in the context of the Sarbanes-Oxley Act that "if Congress had intended that the whistleblower provision would apply abroad to foreign entities, it would have said so, and certainly would have considered, before enacting the law, the problems and limits of extraterritorial enforcement. . . . Congress's complete silence suggests that it had no thought or intention to apply this provision to foreign . . . entities as now proposed").

15

The government provides several arguments as to why § 1904(c) rebuts the presumption against extraterritoriality, none of which are persuasive.

First, the government claims that the Kingpin Act rebuts the presumption against extraterritoriality because it was passed to generally counter foreign threats. *See* Gov. Merits Opp'n at 30. The general purpose of the statutory scheme, however, is beside the point. The Supreme Court has made clear that each provision of a statute must be analyzed separately. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) (refusing to impute extraterritorial application from one section of the Securities Exchange Act to another, emphasizing that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms").[13] Moreover, a law can have the purpose of targeting foreign threats while also limiting certain prohibitions to domestic parties. Such is the case with the FCPA, which was enacted to combat foreign bribery yet undisputedly limits its reach to U.S.-related entities and those acting while located in the United States. *See* 15 U.S.C. §§ 78dd-1, 78dd-2, 78dd-3.

Similarly, contrary to the government's rationale, the fact that Mr. López Bello was charged under the *Foreign* Narcotics Kingpin Designation Act is irrelevant. *See* Gov. Merits Opp'n at 31. Several criminal regulatory regimes are titled with similar adjectives, yet they do

---

[13] *United States v. Epskamp*, 832 F.3d 154 (2d Cir. 2016), which the government cites, *see* Gov. Merits Opp'n at 30, does not hold differently. In that case, the court was faced with "inartful drafting" that resulted in a substantive provision clearly encompassing broad swaths of conduct, while the applicable venue provision glaringly omitted much of that same conduct. *Id.* at 162–64. The court reasoned that the general statutory scheme warranted inferring an extraterritorial application for several reasons that are not implicated by the Kingpin Act. For example, the court noted that applying the relevant statute to only domestic conduct would make the statute redundant with another law that already regulated the same domestic activities. *See id.* at 164 ("That [18 U.S.C.] § 959(b)(2) would otherwise be duplicative of § 841(a) is a most compelling indication that Congress intended § 959(b)(2) to have added extraterritorial effect." (internal quotation marks omitted)). Moreover, unlike with § 959(b) in *Epskamp*, there is no conflict between the plain text and the statutory scheme of the Kingpin Act. Both confirm that 21 U.S.C. § 1904(c) applies only to U.S. persons and those acting while located in the United States.

not apply extraterritorially.  *See* 15 U.S.C. §§ 78dd-1, *et seq.* (*Foreign* Corrupt Practices Act); 22

C.F.R. § 129.2 (brokerage prohibitions of the *International* Traffic in Arms Regulations apply

only to U.S. persons, foreign persons located in the United States, or foreign persons owned or

controlled by U.S. entities).  Moreover, even if it were relevant, the government is mistaken in

claiming that "foreign" describes the scope of the entire statute, let alone the prohibitions in

§ 1904(c).  The adjective "foreign" in the title describes the persons who are subject to the

Kingpin Act's sanctions *designation* authority.  Indeed, the Kingpin Act grants statutory

authority for an economic sanctions program targeting certain actors, *see* 21 U.S.C. §§ 1902,

1903, 1904(a)-(b), and the title of the Act describes the *foreign* narcotics kingpins who can be

designated for such blocking sanctions.

    Lastly, the government unpersuasively attempts to compare the Kingpin Act to other

criminal statutes aimed at combatting narcotics.  *See* Gov. Merits Opp'n at 32.  Unlike § 1904(c),

however, these statutes do not expressly limit their prohibitions to U.S. conduct through terms

like "United States person" or "within the United States."[14]

---

[14] *See United States v. Orozco-Prada*, 732 F.2d 1076, 1087–88 (2d Cir. 1984) (21 U.S.C. § 841(a)(1), which makes it "unlawful for any person knowingly or intentionally" to, among other things, manufacture or distribute a controlled substance); *United States v. Londono-Villa*, 930 F.2d 994, 999–1000 (2d Cir. 1991) (21 U.S.C. § 952 which makes it "unlawful . . . to import into the United States from any place outside thereof[] any controlled substance"); *United States v. Al Kassar*, 660 F.3d 108, 118–19 (2d Cir. 2011) (18 U.S.C. § 1114, which, at the time of the decision, broadly provided criminal penalties for "[w]hoever kills or attempts to kill any officer or employee of the United States").  In support of its argument, the government also cites *Chua Han Mow v. United States*, 730 F.2d 1308, 1311–12 (9th Cir. 1984), an inapposite case which involved a statute that by its plain text applies to those outside the United States.  *See* 21 U.S.C. § 959(d) (providing that the prohibitions are "intended to reach acts of manufacture or distribution committed outside of the territorial jurisdiction of the United States").

2.     This Prosecution Is an Impermissible Application of the Kingpin Act to
       <u>Foreign Conduct</u>

Because the statute fails to rebut the presumption against extraterritoriality, the Court

should proceed to step two and determine whether conduct relevant to the statute's focus

occurred in the United States.

As the government notes, the main objective of the Kingpin Act is to disrupt narcotics

traffickers by blocking their property. *See* Gov. Merits Opp'n at 18. To achieve this goal, the

Act blocks "all . . . property and interests in property" of designated foreigners "within the

United States, or within the possession or control of any United States person." 21 U.S.C.

§ 1904(b). In turn, § 1904(c) works in tandem with § 1904(b) by prohibiting transactions

involving blocked assets. Thus, the purpose and focus of § 1904(c) is to prohibit transactions

that involve property blocked by § 1904(b): assets within the United States and controlled or

retained by U.S. persons.

Given this focus, the government's proffered facts do not state a domestic application of

§ 1904(c). The government claims that "illegal money flows to U.S. persons and entities . . . to

pay for flights . . . all occurred in the United States." *See* Gov. Merits Opp'n at 28. Yet it does

not claim that Mr. López Bello directly sent any payments to the United States or transacted with

blocked property. Further, to the extent the government contends that Mr. López Bello indirectly

paid U.S. persons by "cash smuggled to the United States" and "wire transfers sent through front

companies to a bank account in the United States," *see id.* at 3, this is not conduct within the

focus of the Kingpin Act because it involved foreign assets, rather than blocked property within

the United States or in the possession or control of U.S. persons. *Cf. Sonterra Capital Master

Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 582 (S.D.N.Y. 2017) (messages

"routed through computer servers into New York" did not constitute domestic conduct for

18

purposes of the wire fraud statute under a civil Racketeer Influenced and Corrupt Organizations Act claim); *Anderson v. Binance*, No. 20 Civ. 2803 (ALC), 2022 WL 976824, at *4 (S.D.N.Y. Mar. 31, 2022) (Securities Exchange Act claims impermissibly extraterritorial, despite allegations that plaintiffs purchased the assets in the United States and title "passed in whole or in part over servers located in California" (internal quotation marks omitted)).  Nor may the government rely on any coconspirators' dealings with blocked property, since "the presumption against extraterritoriality bars the government from using the conspiracy and complicity statutes to charge [Mr. López Bello] with any offense that is not punishable under the [Kingpin Act] itself because of the statute's territorial limitations." *Hoskins*, 902 F.3d at 97.[15]

The government also points to flights between foreign countries aboard American-registered planes that were operated by U.S. pilots, as well as messages between Mr. López Bello and U.S. persons.  *See* Gov. Merits Opp'n at 27–28, 36.   The government fails to explain how these facts are relevant to the extraterritoriality analysis, since they are entirely outside the focus of § 1904(c) and also do not involve blocked property.  *See Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("[E]vents . . . merely incidental to the [violation of a statute] do not have primacy for the purposes of the extraterritoriality analysis." (second alteration in original; internal quotation marks omitted)).

Setting aside this irrelevant conduct, it is clear that the government is prosecuting Mr. López Bello for actions taken abroad.[16]  According to the Indictment, Mr. López Bello chartered

---

[15] The government repeatedly discusses the transfer of "Lopez Bello's aircraft located in the United States."  *See* Gov. Merits Opp'n at 10; *see also id.* at 3, 15.  However, in relation to the sentencing of Mr. López Bello's codefendant, the government specified that this aircraft was owned by "an associate of" Mr. López Bello, and that it was the codefendant who "engineered" this transfer.  *United States v. Coro*, No. 19 Cr. 144 (AKH), ECF No. 200 at 17.

[16] As mentioned in our opening brief, the Indictment alleges that each count was "begun and committed out of the jurisdiction of any particular State or district of the United States."  Ind. ¶¶ 21, 26, 30, 34, 40, 42, 44, 46.  The government's response is, in effect, that it did not really mean what it alleged, and that it

flights between foreign countries to facilitate meetings with foreign officials, all to support a foreign election. Ind. ¶¶ 1-4, 24. It further alleges that these flights were financed by cash delivered to Venezuela and a business entity incorporated in Turkey. *Id.* ¶ 24. This prosecution is an obvious attempt to apply § 1904(c) to foreign conduct, and the charges should be dismissed.

### 3.   *Bowman* Is Inapplicable to the Kingpin Act

To escape the extraterritoriality problem, the government cites *Bowman*, claiming that the presumption against extraterritoriality "does not apply to . . . criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction." *See* Gov. Merits Opp'n at 29 (internal quotation marks omitted). As we explained in our opening brief, the Supreme Court's recent extraterritoriality jurisprudence has placed the continued viability of *Bowman* in doubt. *See* Br. at 20 n.12.[17] To the extent *Bowman* is still good law, it is limited to offenses where "the very nature of the crime outlawed" appears "to apply extraterritorially." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1346 (D.C. Cir. 2004); *see also United States v. Garcia Sota*, 948 F.3d 356, 360 (D.C. Cir. 2020) (applying *Bowman* where there is a "high probability that the criminalized conduct would occur abroad"). In other words, *Bowman* is only

---

is allowed to rely on 18 U.S.C. § 3238, a generic venue-laying statute, even for acts that occurred in the United States. *See* Gov. Merits Opp'n at 16 n.5. Whether or not the government has properly alleged venue, "[i]n reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, at *2 (S.D.N.Y. Oct. 20, 2015) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

[17] The government cites several cases for the proposition that *Bowman* is still applicable, but it overstates their holdings. The court in *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) relied on *Bowman* to find that the offense clause of the federal conspiracy statute, 18 U.S.C. § 371, applies to foreign conduct when the underlying substantive statute also applies extraterritorially. *Id.* at 87–88. But before even proceeding to that question, the court analyzed the substantive provision, 18 U.S.C. § 32(a), to determine whether it reaches foreign conduct. *Id.* at 86–87. And in *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013), the court relied on *Bowman* only to reject the government's overbroad assertion that the presumption against extraterritoriality is inapplicable to criminal statutes. *Id.* at 73–74.

applicable where extraterritorial application can "be inferred from the nature of the offense." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (internal quotation marks omitted).

Extraterritorial application cannot be inferred from the Kingpin Act's prohibitions, which apply only to transactions or dealings by "United States persons" and "within the United States." 21 U.S.C. § 1904(c).  Accordingly, *Bowman* is inapplicable; § 1904(c) does not apply to foreign parties located abroad; and Counts 4 through 8 are impermissible attempts to apply the Kingpin Act to foreign conduct.  The Court should dismiss the Kingpin Act counts on extraterritoriality grounds.

## II. THE COURT SHOULD DISMISS THE *KLEIN* CONSPIRACY CHARGE

The *Klein* conspiracy count fares no better.  As we argued in our opening brief, the government failed to properly allege a conspiracy to defraud the United States under 18 U.S.C. § 371.  *See* Br. at 16–19.  Furthermore, Count 1 is an impermissible extraterritorial application of the statute.  *See id.* at 19–20.  Just as with the Kingpin Act counts, the government fails to apply the well-settled extraterritoriality framework and cites to irrelevant domestic connections.

### A. The Indictment Fails to Allege a *Klein* Conspiracy

The parties agree that the defraud clause of 18 U.S.C. § 371 "reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government."  *See* Gov. Merits Opp'n at 33; Br. at 16.  The problem is that the government has not alleged such a conspiracy.  According to the Indictment, the object of Count 1 was to "defraud the United States by impairing, obstructing, and defeating the lawful functions of the Treasury Department and OFAC . . . **by engaging in transactions and obtaining services in violation of the Kingpin Act and the Kingpin Act Regulations**."  Ind. ¶ 23 (emphasis added). Thus, the alleged fraud on the government is violating U.S. sanctions.  This is an untenable

charging theory.  Not every violation of the law is a fraud on the U.S. government.  If it were, every violation of the offense clause would also constitute a violation of the defraud clause.  The allegations in the Indictment are thus insufficient as a matter of law.

### B.       Count 1 Is an Impermissible Extraterritorial Application of § 371

Count 1 also fails on extraterritoriality grounds.  As noted in our opening brief, the text of the defraud clause of § 371 does not provide for extraterritorial application.  *See* Br. at 19–20.  In response, the government claims that (1) Count 1 is a domestic application of the defraud clause and (2) in any event, the statute applies to foreign conduct under *Bowman*.  *See* Gov. Merits Opp'n at 37–40.  Neither argument has merit.

First, Count 1 is not a domestic application of the defraud clause.  The defraud clause is focused on acts taken to defraud the United States.[18]  The alleged acts Mr. López Bello took to evade sanctions are "ceasing flights into and outside the United States,"[19] using "code names, encrypted messaging applications, cash payments, a front company, and falsified flight manifests and invoices," and paying for illegal services through U.S.-based financial institutions, cash smuggled into the U.S, and the transfer of an aircraft.  Gov. Merits Opp'n at 35–36.  But even taking the government's allegations as true, Mr. López Bello did not engage in any of these alleged acts in the United States.[20]  *Cf. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 107–

---

[18] The defraud clause of § 371 prohibits "two or more persons" from conspiring "to . . . defraud the United States . . . [if] one or more of such persons **do any act to effect the object of the conspiracy.**"  18 U.S.C. § 371 (emphasis added).  Thus, the conduct that the statute seeks to regulate is acts in furtherance of fraud.  *Cf. Bascuñán*, 927 F.3d at 122 (finding that for purposes of the wire fraud statute, "the regulated conduct is not merely a 'scheme to defraud,' but more precisely the use of the mail or wires in furtherance of a scheme to defraud" (emphasis omitted)).

[19] On this point, the government is ironically claiming that Mr. López Bello evaded sanctions by complying with U.S. law.  As explained in our prior reply brief, the government's sanctions made it illegal for Mr. López Bello to reenter the country.  *See* Reply Br. at 5–6.

[20] The Court should also reject the government's argument that Count 1 is a domestic application of § 371 because the object of obstruction, a U.S. agency, was in the United States.  *See* Gov. Merits Opp'n at 37–38.  For purposes of extraterritoriality, § 371 is focused on acts taken to defraud the United States, not the

08 (2d Cir. 2019) (claim under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, impermissibly extraterritorial despite the plaintiff alleging that the conduct caused an effect in the United States because "all of the relevant conduct" related to the focus of the statute "occurred abroad").

Second, *Bowman* is unavailing. As discussed at pages 20–21 above and in our opening brief, *Bowman*'s continued viability is far from clear. If it remains viable, it is limited to statutes where "the very nature of the crime outlawed" appears "to apply extraterritorially." *Delgado-Garcia*, 374 F.3d at 1346; *see also Al Kassar*, 660 F.3d at 118 (applying *Bowman* where extraterritorial application could "be inferred from the nature of the offense"). Nothing in the nature of the defraud clause suggests extraterritorial application. To the contrary, most applications of the statute – especially under the obstruction of U.S. government functions theory – would presumably involve acts taken within the United States to frustrate and impede the U.S. government.

---

location of the victim. That is why the Second Circuit's framework for the wire fraud statute similarly focuses on the location of wires that were essential to the fraudulent scheme, rather than the location of the defrauded party. *See Napout*, 963 F.3d at 179; *Bascuñán*, 927 F.3d at 122.

**CONCLUSION**

For the reasons stated herein and in our prior briefs, the charges against Mr. López Bello should be dismissed.

Dated:   February 3, 2023                     Respectfully submitted,
           New York, New York

                                              By:  /s/ Edward Y. Kim
                                            KRIEGER KIM & LEWIN LLP
                                            500 Fifth Avenue, 34th Floor
                                            New York, New York 10110
                                            Tel.: (212) 390-9550
                                            Edward.Kim@KKLllp.com
                                            Jonathan.Bolz@KKLllp.com
                                            Vlad.Shafran@KKLllp.com

                                            ALEXEI SCHACHT
                                            123 West 94th Street
                                            New York, New York 10025
                                            Tel.: (646) 729-8180
                                            alexei@schachtlaw.net

                                            *Attorneys for Samark José López Bello*

24